UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:25-CV-00208-CRS

**JESSICA E.**                                                                                                    **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
*Commissioner of Social Security*[1]                                                                    **DEFENDANT**

### FINDINGS OF FACT, CONCLUSIONS OF LAW
### AND RECOMMENDATION

Claimant Jessica E. appeals from the final determination of the Commissioner of Social Security denying her applications for supplemental security income benefits and disability insurance benefits. (DN 1). Claimant has filed a Fact and Law Summary and Brief. (DN 12; DN 13). The Commissioner has responded in a Fact and Law Summary. (DN 15). Claimant has filed a reply. (DN 16). The District Judge has referred this case to the undersigned United States Magistrate Judge for consideration and preparation of a Report and Recommendation, as authorized in 28 U.S.C. § 636(b)(1)(B). (DN 11).

### I. Findings of Fact

Jessica E. ("Claimant") applied for supplemental security income benefits under Title XVI and disability insurance benefits under Title II on July 21, 2023, alleging disability beginning March 1, 2021. (Transcript, hereinafter, "Tr." 232-46). She alleged disability due to bipolar disorder, major depression, anxiety, osteoarthritis, fibromyalgia, heart murmur, spinal stenosis, and hypertension. (Tr. 302). Claimant's applications were denied at both the initial and reconsideration levels. (Tr. 102-131).

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. He is automatically substituted as the named defendant pursuant to Fed. R. Civ. P. 25(d).

At Claimant's request, Administrative Law Judge William Zuber ("ALJ Zuber") conducted a remote hearing on November 14, 2023. (Tr. 40-71). Claimant appeared by phone with her attorney. (Tr. 42). An impartial vocational expert also participated. (*Id.*). ALJ Zuber noted he was bound by the findings of a prior ALJ's decision issued on February 21, 2023, and that the hearing would focus on what has occurred since that decision. (Tr. 43-44). Claimant confirmed that the biggest changes since February 2023 have been pain management for degenerative disc disease, monitoring of a mild heart condition (mitral regurgitation), and increased treatment for "continence, overactive bladder[.]" (*Id.*).

Regarding pain management for her back issues, Claimant testified to using medication and some chiropractic care. (Tr. 46). Her pain has remained the same despite this treatment. (Tr. 46). Her fibromyalgia, Claimant testified, has gotten worse. (Tr. 47). Bending is difficult. (Tr. 50). She estimates she can work in the kitchen, standing and walking, for ten to fifteen minutes without needing a break. (Tr. 51-52). After fifteen minutes of sitting, she needs to switch positions because of aches that start in her lower back and then run down her right leg. (Tr. 52-53). She can drive for fifteen-minute trips around town to pharmacies or restaurants but would have difficulty shopping for groceries. (Tr. 54-55).

Claimant testified that she uses the bathroom six or seven times a day, but the urgency gives her only seconds to get to the bathroom. (Tr. 45). She stated it was not unusual for her to have accidents when she is not close enough to a bathroom. (*Id.*). Her doctors have talked about switching medications or trying bladder flushing, and if those don't work, proceeding with surgery. (Tr. 46). She has not tried wearing protective undergarments. (Tr. 45).

Although she claims her mental impairments have "remained the same," she indicates she is "all over the place" and that she has "longer periods of being better and sometimes being worse."

2

(Tr. 47). Crowds, meetings, and personal interactions increase her anxiety, but she was able to travel and tour New York City recently. (Tr. 55-56). Claimant testified to having trouble sleeping through the night and that she takes naps that could last 30 minutes to 3.5 hours. (Tr. 60-61). On "bad days," which are about three times a week, she naps off and on all day. (Tr. 61).

ALJ Zuber issued an unfavorable decision on May 28, 2024. (Tr. 22-32). Applying the five-step sequential analysis for disability claims from 20 C.F.R. § 404.1520(a), ALJ Zuber made the following findings. First, Claimant has not engaged in substantial gainful activity since March 1, 2021, the alleged onset date. (Tr. 24). Second, Claimant has the following severe impairments: lumbar degenerative disc disease, fibromyalgia, hypertension, mitral regurgitation, urge incontinence, depression, anxiety, and ADHD. (Tr. 24-25). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 25-26). At the fourth step, ALJ Zuber determined that Claimant has the residual functional capacity to perform "light work" with the following limitations:

> she can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can have frequent exposure to vibration, unprotected heights, and dangerous moving machinery. She can sit for 30 minutes at a time, and stand/walk for 30 minutes at a time. She should have easy access to the restroom. She can understand, remember, and carry out simple routine tasks and instruction in a routine work setting with minimal variation, requiring little independent judgment for simple work-related decisions. She can have occasional contact with the public, and can maintain concentration, persistence, and pace for 2-hour periods.

(Tr. 26-27). At this step, ALJ Zuber also found Claimant is unable to perform any of her past relevant work. (Tr. 30-31). Fifth and finally, considering the Claimant's age, education, work experience, and RFC, ALJ Zuber determined there were jobs existing in significant numbers in the national economy that Claimant can perform. (Tr. 310).

ALJ Zuber concluded that Claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2021, her alleged onset date, through the date of the decision. (Tr. 32). Claimant administratively appealed ALJ Zuber's denial. (Tr. 227-28). The Appeals Council declined to review ALJ Zuber's decision. (Tr. 6-9). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as

adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III.  Analysis

Claimant presents two claims of error. First, she argues ALJ Zuber failed to sufficiently explain how the evidence supported the inclusion of position changes at 30-minute intervals in the RFC. (DN 13, at PageID # 1634-38). Second, Claimant argues ALJ Zuber did not adequately account for Claimant's incontinence. (*Id.* at PageID # 1638-41).

#### A. ALJ Zuber's Analysis of Claimant's Need to Alternate Positions

Claimant says that ALJ Zuber pointed to no evidence of record to justify a restriction that she alternate positions every thirty minutes. Claimant asserts "it is clear that the need to alternate position was derived from the Claimant's testimony" but the frequency of position changes assessed by ALJ Zuber does not coincide with Claimant's testimony. (DN 13, at PageID # 1637). In Claimant's view, ALJ Zuber should have explained why he deviated from her testimony that she needs to change positions every fifteen minutes and his failure leaves the RFC without substantial support. (*Id.*). This error cannot be considered harmless, Claimant argues, because the VE testified that if position changes were required at 15-minunte intervals, there would be no available jobs. (*Id.*).

The Commissioner responds that ALJ Zuber reasonably determined that Claimant's statements that she needed to change positions every 15 minutes were inconsistent with the evidence of record, and such determination should be given considerable deference. (DN 15, at PageID # 1649). According to the Commissioner, ALJ Zuber appropriately considered Claimant's

5

conservative treatment history, unremarkable objective medical evidence, and extensive activities of daily living and found they were inconsistent with her subjective complaints as to her ability to sit, stand, walk, and change positions and that no greater than a 30-minute sit/stand option was necessary. (*Id.* at PageID # 1651).

In reply, Claimant concedes that ALJ Zuber evaluated the subjective complaints and objective evidence of record, but that he still failed in his obligation to explain the basis of his findings. (DN 16, at PageID # 1661-62). Claimant argues the Commissioner is attempting to engage in *post hoc* rationalizations for an otherwise unsupported limitation. (*Id.*).

ALJ Zuber was not required to credit or adopt Claimant's testimony that she needed to change position every fifteen minutes. He recognized Claimant's testimony that she "can only stand for 30 minutes before she needs a break, and she can sit for 15 minutes before she needs to change positions." (Tr. 28). He determined, however, that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*). Then, after thoroughly discussing the prior administrative findings related to Claimant's back and fibromyalgia and how "little has changed" with Claimant's conditions and treatment since the last hearing, ALJ Zuber found Claimant's exertional limitations should remain the same. Considering that Claimant's continued "conservative treatment" and "extensive activities of daily living did not warrant additional restrictions, ALJ Zuber added restrictions on the length of time that Claimant could sit or stand. ALJ Zuber was not required to provide additional explanation for including such a limitation.

While ALJs may not impermissibly play doctor and add unsupported limitations to an RFC, that did not occur here. To summarize, ALJ Zuber considered Claimant's testimony, found it was

not entirely consistent with the record, discussed the record evidence, and then added the limitation on Claimant being able to change positions every thirty minutes. ALJ Zuber's analysis is supported by substantial evidence in the record and complies with the applicable regulations.

### B. ALJ Zuber's Analysis of Claimant's Urge Incontinence

Claimant next alleges ALJ Zuber erred by failing to include any limitation in the RFC to account for the frequency and duration of her bathroom breaks. (DN 13, at PageID # 1639-40). Claimant points out that ALJ Zuber found her "urge incontinence" was a severe impairment at Step Two but only assessed an RFC limitation of "ready access to a restroom." Claimant highlights evidence of record that she believes "require[s] much greater access to a restroom than the RFC assessment allows." (*Id.*). This evidence includes her reports of urinating every 15 to 20 minutes, being diagnosed with urge incontinence and overactive bladder, prescriptions for Vesicare and pelvic floor therapy, continued accidents, and reports that her medication was "helping, but it was wearing off around 5 p.m." (*Id.* at PageID # 1640). Because ALJ Zuber did not explain how his definition of "ready access to a restroom" was sufficient to accommodate Claimant's impairment, Claimant maintains he failed to build an accurate and logical bridge between the evidence and his assessment. (*Id.*).

Claimant additionally complains that ALJ Zuber did not address her need for unscheduled breaks to accommodate her urgent need to urinate. (*Id.*). She emphasizes the VE's testimony that "we have to add not only that the restroom has to be nearby but how many times an individual would go resulting in how much time is lost." (*Id.* (citing Tr. 66)). Relying on several cases for the proposition that "[w]hen an ALJ includes an RFC limitation regarding bathroom access, the ALJ should make a specific finding as part of the RFC about the frequency of bathroom usage[,]" Claimant asserts ALJ Zuber's lack of analysis regarding frequency results in reversible error. (DN

7

13, at PageID # 1638-39, 1641 (citations omitted)).

The Commissioner responds that even if ALJ Zuber had found Claimant's testimony that she urinates six to seven times daily, three to four of which would be during working hours, no additional limitations in the RFC would be necessary because "[a]ll jobs contemplate regular breaks during a normal workday." (DN 15, at PageID # 1652-53 (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 724 (6th Cir. 2013); Social Security Ruling 96-9p, 1996 WL 374185, at *6 (July 2, 1996))). The Commissioner further argues that ALJ Zuber's determination that Claimant's urge incontinence results in no limitation greater than "easy access to the restroom" is supported by substantial evidence. (*Id.* at PageID # 1653-55). ALJ Zuber was not required to accept Claimant's subjective allegations where they were inconsistent with the evidence of record, the Commissioner explains. (*Id.*). The Commissioner points out that Claimant has not identified any evidence ALJ Zuber misconstrued or did not consider related to her urinary incontinence and that the cases Claimant relies upon are factually distinguishable. (*Id.* at PageID # 1655-58). As to the VE's testimony regarding the effect her limitations would have on the available job base, the Commissioner says ALJ Zuber properly relied on the VE's testimony. (*Id.* at PageID # 1658-59).

Claimant replies that the Commissioner is again making a *post hoc* rationalization of the ALJ's findings. (DN 16, at PageID # 1663). The very nature of urinary incontinence, which is characterized by "an urgent need to urinate that is difficult to control and can lead to a loss of urine[,]" Claimant argues, requires more than "regular breaks." (*Id.*). Claimant reiterates that ALJ Zuber did not appropriately consider the VE's testimony, did not include frequency or duration limitations on bathroom breaks in the RFC, and did not explain how a normal break schedule could accommodate her urgent need to urinate. (*Id.* at PageID # 1663-64).

At the end of the administrative hearing, Claimant's attorney inquired to the Vocational

8

Expert as to what effect adding the need for "a workstation in close proximity to a restroom facility" would have on the ALJ's hypothetical individual's job availability. (Tr. 66). The VE responded that some jobs would still be available, but the number would be greatly reduced and "we have to add not only that the restroom has to be nearby but how many times an individual would go resulting in how much time is lost." (*Id.*). Claimant's attorney then asked how the hypothetical's job base would be impacted if in addition to needing close proximity to the restroom, the individual required four extra ten-minute breaks per day to use the restroom. (Tr. 66-67). The VE answered that "[o]nce that became a pattern there would be no work. That is equivalent to missing three to four hours per week. Multiply that by the month and we are getting into days missed and that would not be acceptable behavior." (Tr. 67). ALJ Zuber later asked: "If I were to add an additional limitation that this individual would require easy bathroom access, which I would just define as having a bathroom facility on the premises of the [sic] where the workstation is . . . would that change the answer to the first hypothetical?" (Tr. 69). The VE indicated his answer would not change, that jobs would still be available, because "by law [] a bathroom has to be accessible." (*Id.*).

At Step Two of his decision, ALJ Zuber found Claimant had the severe impairment of "urge incontinence." (Tr. 24). Then, in analyzing Claimant's subjective complaints in the RFC, ALJ Zuber discussed Claimant's testimony that she is treated by medication for frequent urination but still goes to the bathroom 6-7 times per day. (Tr. 27-28). He further recounted her testimony that her "need to go [to the bathroom] is urgent" but that she is not currently using protective undergarments. (*Id.*). ALJ Zuber determined Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record. (Tr. 28).

9

Reviewing the objective medical evidence, ALJ Zuber noted that Claimant's "urge incontinence" was a "significant new problem" since the administration's last decision. (Tr. 29 (citing Ex. B19F, p. 21)). ALJ Zuber recounted that Claimant first complained of urinary urgency in December 2023 and was prescribed medication. (*Id.*). He additionally discussed that Claimant had a follow-up in March 2024, where she reported that medication was helping, but wearing off by 5pm, and she was still having urgency. (*Id.*). Though Claimant's medication was increased, and she was directed to continue pelvic floor therapy, ALJ Zuber pointed out that "[a]s of yet, the claimant has not required protective undergarments or surgical intervention." (*Id.*). ALJ Zuber ultimately found Claimant "should have easy access to a restroom" based on her urge incontinence, even though she has only recently started being treated for this condition, and adopted such a restriction in the RFC. (Tr. 27, Tr. 29). However, ALJ Zuber found no further limitation was warranted by the evidence of record. (*Id.*).

First, the Court disagrees that ALJ Zuber failed to assess frequency and duration of unscheduled bathroom breaks. The VE indicated that a limitation on a claimant's proximity to a restroom also requires analysis of "how many times that individual would have to use that restroom." (Tr. 66). Claimant cites to a handful of unpublished cases from other districts that echo the VE's concerns. Most of these cases rely on the Eastern District of Tennessee's decision in *Green v. Astrue*. In *Green*, the ALJ found the plaintiff's urinary incontinence was a severe impairment that limited her work-related functionality because it caused her to need "frequent restroom breaks." No. 3:09-CV-331, 2010 WL 2901765, at *4-6 (E.D. Tenn. July 2, 2010). But the ALJ did not provide explanation for how often or how long plaintiff needed to visit the restroom over the course of a workday. *Id.* The court determined that "when a social security claimant has an impairment that requires her to have "ready access to a bathroom" and the freedom

10

to use it "as needed," an ALJ should "make a specific finding concerning the frequency and duration of [the claimant's] bathroom usage" as part of the statement of the RFC. *Id.* (citation omitted). The court, accordingly, found the ALJ's failure to specify precisely how plaintiff's need for frequent restroom breaks impacted her ability to work was reversible error. *Id.*

In another case from the same district, *Miles v. Commissioner*, the court extensively cited to *Green* to find that the ALJ's failure to make specific findings about the frequently and length of bathroom breaks after imposing a bathroom related limitation was impermissibly vague and did not "convey the degree to which [the claimant's] work was limited." No. 2:24-CV-20-DCP, 2024 WL 4218232, at *3-4 (E.D. Tenn. Sept. 17, 2024). In so finding, *Miles* took *Green* a step further, holding that that "[w]hen an ALJ includes an RFC limitation regarding bathroom access, the ALJ should make a specific finding as part of the RFC about the frequency and duration of bathroom usage." *Id.* (citing *McQuade v. Comm'r of Soc. Sec.*, No. 1:21-cv-834, 2022 WL 4375984, at *3 (N.D. Ohio Sept, 22, 2022); *Green*, 2010 WL 2901765, at *5; *Meghan I.B. v. Comm'r of Sc. Sec.*, No. 2:22-cv-2238, 2022 WL 16945709, at *3 (S.D. Ohio Nov. 15, 2022)). Other courts applying *Green* have distinguished cases where the ALJ does not find the claimant's incontinence to be a severe impairment at Step Two. *See, e.g., Forester v. Comm'r of Soc. Sec.*, No. 5:21-cv-5-PRL, 2022 WL 11361988, at *4 (M.D. Fla. July 8, 2022) (finding that ALJ was not required to discuss frequency of bathroom breaks in RFC where ALJ did not find incontinence to be a severe impairment).

While this Court is not bound by these unpublished cases from other districts, ALJ Zuber's analysis complies with their principles. ALJ Zuber found Claimant's urge incontinence was a severe impairment at Step Two and then went on to thoroughly address the subjective and objective evidence of this impairment in the RFC. Although he only added a restriction regarding proximity

11

of the restroom and did not include a restriction as to frequency of restroom visits, he explicitly found that "no further limitation" was warranted by the record. *Green* and cases applying *Green* do not hold that an ALJ must incorporate a limitation as to frequency and duration of restroom breaks but only that the ALJ must make a specific finding regarding frequency and duration. ALJ Zuber did so by evaluating the evidence related to this impairment and finding no further limitation was necessary.

The question in the end is whether the ALJ's RFC is supported by substantial evidence in the record. The Courts finds it is. ALJ Zuber accurately recounted the evidence relating to Claimant's urge incontinence, both objective and subjective, in the RFC analysis. Claimant highlights evidence she believes shows she needs much greater access to a restroom than the RFC allows. But ALJ Zuber discussed and evaluated almost all this evidence. While recognizing her diagnosis and complaints of urgency starting in December 2023, ALJ Zuber recounted how Claimant didn't see the provider again until March 2024 and reported improvement after starting medication. ALJ Zuber noted, however, Claimant's statements that the medication would wear off around 5:00 PM and that she was still feeling urgency, as well as increases to her medication. Claimant's testimony from the hearing that she uses the bathroom 6-7 times per day, 3-4 of which would be during the workday, that she has accidents but does not use protective undergarments, and that when she needs to go it is urgent were discussed by ALJ Zuber as well.

The only evidence Claimant mentions that ALJ Zuber did not discuss were her reports from her initial appointment in December 2023 of urinating every 15-20 minutes. But an ALJ is not required to repeat every piece of record evidence in rendering his decision. Moreover, after reporting the need to urinate every 15-20 minutes, Claimant started taking medication that she admits helped and was later increased when it did not provide all-day relief. And the testimony

12

offered at her hearing contradicted her claims that she was using the restroom every 15-20 minutes.

The evidence Claimant relies on does not demonstrate additional functional limitation was necessary relating to Claimant's urinary incontinence. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant "retains the burden of proving her lack of residual functional capacity."). As the Commissioner points out, all gainful employment allows for regular restroom breaks, and Claimant has not demonstrated that the three to four restroom breaks she testified to needing during the workday would require additional limitation. ALJ Zuber drew a clear and logical bridge between the evidence relating to Claimant's urge incontinence (i.e., that the condition exists but is being treated by medication with some success and has not required more intensive treatment or surgery), and the functional limitation that she have easy access to a restroom. Because ALJ Zuber's determination is supported by substantial evidence in the record, the Court finds no error.

## IV. Recommendation

ALJ Zuber's decision is supported by substantial evidence in the record and comports with the applicable regulations; accordingly, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

## NOTICE

Therefore, under the provisions of 28 U.S.C. " 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).


Copies:        Counsel of Record